A97A0337. WELLS v. THE STATE.
(486 SE2d 390)

JOHNSON, Judge.

A jury found Delim Wells guilty of two counts of theft by taking for taking a 1994 Ford Mustang and 1994 Ford Probe from the car dealership where he worked. He appeals from the convictions

entered on the jury's verdict and the denial of his motion for new trial.

1. Wells argues that the trial court erred in denying his motion for new trial when the verdict was contrary to and strongly against the weight of the evidence. On appeal, we do not weigh the evidence but only determine if the evidence is sufficient to enable a reasonable trier of fact to find proof of guilt beyond a reasonable doubt. *Rios v. State*, 193 Ga. App. 485, 486 (1) (388 SE2d 527) (1989). In making that determination, we are required to view the evidence in a light most favorable to the verdict. Id. at 486 (1).

So viewed, the evidence shows that Wells worked as a porter in the body shop at Southlake Ford from May 17, 1995 until June 16, 1995. As a porter, he was responsible for cleaning cars that Ford Motor Company sent to Southlake Ford for repairs. Although his job required that he move cars around on the lot, he was not authorized to drive cars off the premises. On August 4, 1995, police officers stopped Wells on Jonesboro Road after seeing him drive a Ford Mustang in a reckless manner. When officers asked Wells if the car was his, he initially stated it was, but then said he worked at Southlake Ford and was using the dealership's car to deliver or pick up automobile parts. Officers checked Wells' driver's license and discovered it was suspended. They called Southlake Ford and spoke to George Harris, the manager of the body shop. Harris told the officers Wells no longer worked at Southlake Ford, that the car was missing, and that Wells was not in lawful possession of the car. At the officers' request, Harris went to the scene to identify the car. Harris testified that Wells was not authorized to drive the car off the premises and he had told all body shop employees during training that the cars were not to leave the lot. Harris added that he asked Wells at the scene what happened to a 1994 Ford Probe that was missing from the lot between May 16 and May 29. Wells told Harris he "got tired of it" and gave it to some friends before he got the Mustang.

At trial, Wells took the stand and denied having the conversation with Harris about the Ford Probe. However, Wells admitted at trial that he drove a 1994 Ford Mustang belonging to Southlake Ford and had been stopped by police and cited for traffic violations several times while driving the Mustang. He added that he had an accident when he drove the car to Michigan. He also admitted keeping the Mustang from June 16, when he was fired, until August 4, though he knew he should not have had the car after his termination. Wells also admitted driving the Ford Probe home on Friday, May 26, but said he returned it on Monday. Wells claimed his supervisor, Felton Thornton, told him he could use the cars.

Wells' argument that the evidence here was insufficient to exclude every other reasonable hypothesis save that of guilt, specifi-

cally his hypothesis that Thornton authorized him to drive the cars off the lot, is unpersuasive. Harris was recalled as a witness and testified that Thornton was a porter, just as Wells was, and had no managerial duties or any authority to permit Wells to drive a car off the lot. Whether the circumstances in a case are sufficient to exclude every reasonable hypothesis except the guilt of the accused is primarily a question for the jury. *Harris v. State*, 236 Ga. 242, 244 (1) (223 SE2d 643) (1976). "[W]e have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law." (Citations and punctuation omitted.) Id. at 244-245. The evidence was sufficient for a rational trier of fact to find Wells guilty of theft by taking beyond a reasonable doubt. See *Massalene v. State*, 224 Ga. App. 321, 324 (3) (480 SE2d 616) (1997); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We reject Wells' contention that the evidence did not show he possessed any criminal intent in taking the Mustang because Thornton gave him the keys and told him he could use the car. Intent is a question for the jury. *Cole v. State*, 186 Ga. App. 243, 244 (1) (366 SE2d 844) (1988). The jury may find criminal intent by considering the accused's words, conduct, demeanor, motive and all other circumstances connected with the act for which he is being prosecuted. See OCGA § 16-2-6. Wells admitted that he knew he was not authorized to have the Mustang after he was fired from Southlake Ford. "The intent to withhold property of another even temporarily satisfies the mens rea requirement of the theft by taking statute." (Citations omitted.) *Ferrell v. State*, 172 Ga. App. 238 (322 SE2d 751) (1984).

2. Wells also claims the state failed to prove the cars were the property of Southlake Ford as alleged in the indictment. In support of this argument, he points to evidence showing the cars were actually owned by Ford Motor Company. However, "those who steal will not be permitted to raise nice and delicate questions as to the title of that which is stolen. The ownership of personal property in an indictment for larceny, may be laid in a bailee having possession of the property when it was stolen. . . ." (Citations and punctuation omitted.) *McIlhenny v. State*, 172 Ga. App. 419, 420 (1) (323 SE2d 280) (1984). Therefore, any variance between the allegations contained in the indictment and the proof offered at trial regarding ownership of the cars was not fatal. See *Baker v. State*, 160 Ga. App. 211, 212 (1) (286 SE2d 458) (1981).

3. Wells contends he was denied the right to a full evidentiary

hearing on his motion for new trial because appellate counsel was not allowed to present testimony from Wells and Wells' trial counsel regarding his ineffective assistance of counsel claim. We have reviewed the hearing transcript and find that the trial court did not prevent either witness from testifying.

At the hearing, appellate counsel called Wells' trial counsel to the stand and proceeded to examine him about his education, trial experience, and investigation of the case. The trial court eventually interrupted the inquiry and asked appellate counsel upon what grounds the ineffective assistance claim was based, since none was specified in the motion for new trial. In response, appellate counsel stated that trial counsel was ineffective inasmuch as he failed to: investigate the case; develop possible defenses; file a demurrer to the indictment; and move for a directed verdict based on the fact that Southlake Ford did not actually own the cars. The trial judge noted that a thief cannot challenge title, and added that Wells' motion would be denied "if that's your only grounds." Rather than reassert the other grounds, appellate counsel continued to argue only about ownership of the cars. The trial judge then remarked: "If that's all you got, you can bring the witness down." Appellate counsel did not say he had other grounds, evidence or witnesses to present. Neither did he object to the witness being excused or the end to the inquiry into the ineffectiveness claim. After the witness stepped down, the court asked to hear the other grounds for the motion for new trial. Counsel then stated that Wells' insufficiency of the evidence argument was also based on the fact that Southlake Ford did not own the cars. At that point, Wells' motion for new trial was denied.

Contrary to Wells' contention, he had the opportunity to present witnesses at the hearing on the motion for new trial, but failed to take full advantage of that opportunity. The record reflects no effort by appellate counsel to call Wells as a witness. And when appellate counsel called trial counsel as a witness, he was permitted to testify. The trial court did not dismiss the witness until after appellate counsel continued to argue only the ownership issue and failed to argue or remind the trial court of any other grounds of ineffectiveness he had orally asserted. Thus, appellate counsel had several opportunities to develop his grounds for the motion before the witness was excused, but he failed to do so.

We point out that the trial court has wide discretion in determining what evidence is relevant and material. *Mosier v. State*, 218 Ga. App. 586, 587 (1) (462 SE2d 643) (1995). We find no abuse of that discretion here. Moreover, Wells does not suggest how he was harmed by the excusal of the witness. "Reversible error does not exist without harm. [Cit.]" Id. at 587 (1).

Wells' reliance on *Heard v. State*, 173 Ga. App. 543 (327 SE2d

767) (1985), as mandating a contrary result in this case is misplaced. In *Heard*, we held that the trial court erred in refusing to conduct a hearing to determine whether a defendant was entitled to new trial counsel based on a claim of ineffective assistance. The trial court in *Heard*, however, held no hearing and made no inquiry into the defendant's request for new counsel. Id. at 543-546 (1). The trial court in the instant case held a hearing and inquired into Wells' claim. Nor do we agree with Wells' reliance on *Martin v. State*, 185 Ga. App. 145 (363 SE2d 765) (1987). In *Martin*, we held that the trial court erred in not allowing trial counsel and the defendants to testify at the hearing as to trial counsel's effectiveness. Id. at 147 (3) (a). In the case before us, trial counsel was permitted to testify and new counsel made no attempt to present testimony from the defendant. We find neither harm nor error.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED APRIL 11, 1997.

Before Judge Ison.

*William H. Turner, Jr.*, for appellant.

*Robert E. Keller, District Attorney, Verda M. Andrews-Stroud, Assistant District Attorney*, for appellee.